NORTHWESTERN BELL TELEPHONE COMPANY, APPELLANT, V. NEBRASKA STATE RAILWAY COMMISSION, APPELLEE.

FILED MARCH 1, 1935. NO. 29312.

*F. E. Randall* and *Tracy J. Peycke,* for appellant.

*Paul F. Good, Attorney General,* and *Edwin Vail, contra.*

Heard before Goss, C. J., Good, Eberly, Day, Paine, and Carter, JJ., and Thomsen, District Judge.

Goss, C. J.

This is an appeal from Nebraska state railway commission.

The matter was initiated by an order made by the commission November 29, 1933, directing all class A telephone companies (those having average annual operating revenues exceeding $100,000) and class B telephone companies (those exceeding $50,000 and up to $100,000) to file with the commission, not later than March 1, 1934, a schedule of depreciation rates by primary accounts which

they propose to apply for the year 1934, together with supporting data. Appellant is a class A company. It seasonably filed its return, but the commission, being dissatisfied, ordered the cause set for hearing March 19, 1934, for "oral examination of the members of respondent's staff, who prepared said schedules, and for the introduction of such evidence as the commission may desire to submit with opportunity of objections and cross-examination by respondent." The record and bill of exceptions show that attorneys and witnesses of appellant appeared and a hearing was held, lasting two days, and the record thereof covering upwards of 200 pages. An inventory and cost engineer and the general auditor of appellant and an accountant for the commission were examined and various schedules, calculations and exhibits were introduced in evidence. At the conclusion of the oral hearing, the cause was "submitted on the record," as appears both in the bill of exceptions and in the transcript of the pleadings, orders and filings.

On April 9, 1934, the record shows an opinion, finding and order. The commission reduced appellant's proposed rate of 4.48 per cent. and entered an order fixing a depreciation rate of $3\frac{1}{2}$ per cent. upon depreciable property, including right of way, to be applied by the respondent for the year 1934.

Appellant presents four contentions:

First. That it was not given full notice of the scope of the hearing and full opportunity to make a defense in the 1934 depreciation rate; that therefore the order was void because it did not afford appellant due process of law under the state and federal Constitutions.

Second. That, since appellant is engaged in both interstate and intrastate commerce, and the congress has committed the matter of uniform accounting of common carriers of interstate commerce, including telephone companies, to the interstate commerce commission, the state commission was without authority to act on matters of accounting even with respect to intrastate commerce.

Third.  That the order is void because it is not based on evidence sufficient to support it, and is contrary to the evidence.

Fourth.  That the commission erred in denying the motion of appellant to vacate the order and to grant a hearing and a new trial.

The Constitution and laws of Nebraska "confer administrative and judicial powers upon the commission in addition to the main purpose of its creation, which is the exercise of legislative powers." *Hooper Telephone Co. v. Nebraska Telephone Co.*, 96 Neb. 245.  The matter is not here for trial *de novo*, but for judicial review as to the legality of the order of which appellant complains.  The appeal and procedure are provided for by section 75-505, Comp. St. 1929.

As to the claim that appellant had no sufficient notice of the scope of the hearing, the record shows that it appeared and for two days participated in the hearings and furnished its schedules showing the rates of depreciation on various kinds of property owned and used by it.  Some of these percentage rates were high and others low, depending upon the character of the property to which the schedules applied.  From them the company arrived at a composite rate of depreciation of 4.48 per cent.  The commission fixed a composite rate of 3½ per cent.  We are not afforded much help by the evidence or by the printed and oral arguments, in determining just how either the appellant or the commission reached their respective conclusions on this point.  But when the record shows that all the evidence was taken that either party desired to offer and that the cause was submitted on the record without objections of any sort until after the decision, we think we ought not, in such a case, to reverse the action on the ground that, after the judgment was entered against a party, it can then claim it was taken by surprise as to the scope of the action.  Indeed, even after the final order was entered, on the hearing of the motion for new trial, the parties stipulated (and it appears in the bill of exceptions) on May 15,

1934, for the admission of additional evidence. This was incorporated in the bill of exceptions in the form of a book of 101 pages on Uniform System of Accounts for Telephone Companies, issued by the interstate commerce commission in 1933. Until the motion for rehearing was filed, setting up the points now relied on, the record does not show that the commission as a court had any notice that appellant was aggrieved by the procedure. The evidence shows that counsel for the telephone company at the outset of the hearing suggested names of parties having to do with the calculation of the rate. Most of these were examined at length in a hearing apparently conducted with all the formality of any court. It appears all through the evidence that what the commission and telephone company were seeking was the proper evidence upon which to base a proper rate of depreciation to be used by the commission in 1934 only. If the telephone company had offered or proposed to offer other or further evidence and had been refused the opportunity, it would have presented a different question than that now before us. We think appellant had timely notice of the scope of the hearing, appeared generally, and was afforded due process of law in the matter.

"The due process provision of the Fourteenth Amendment has regard not to matters of form but to substance of right." *Western Life Indemnity Co. v. Rupp*, 235 U. S. 261.

Paragraph 5, sec. 20, title 49, U. S. C. A.—the interstate commerce act—authorizes the interstate commerce commission, in its discretion, to prescribe the forms of all types of accounts to be kept by carriers and makes it unlawful for such carriers to keep any other forms of accounts than those prescribed by the commission. Appellant argues therefrom that it has no right to keep, or to be required by the state railway commission to keep, its accounts in the form prescribed by the state commission. We do not find that the interstate commerce commission has ever seen fit to act upon the question of the rate of de-

preciation to be used in intrastate companies though they may do an interstate business. Even assuming that the congress has authorized such action (which we do not decide), and assuming that the ultimate decision would rest with the interstate commerce commission as to intrastate rates (which also we do not decide), and that the state railway commission would be bound by that decision, still, the federal commission not yet having acted upon the question, the state commission has the right to act until such time as the federal commission exercises its authority.

The supreme court, Chief Justice Hughes writing the opinion, said in *Smith v. Illinois Bell Telephone Co.* (1930) 282 U. S. 133 (on p. 159) : "The company urges that, as Congress has granted jurisdiction to the Interstate Commerce Commission over the depreciation rates of telephone companies doing an interstate business (Interstate Commerce Act, sec. 20 (5), as amended by Transportation Act (February 28) 1920, U. S. C. A. title 49, sec. 20 (5), this subject is now completely withdrawn from the power of the state. It is said that two rates of depreciation cannot be charged on the same property. The Interstate Commerce Commission has had the matter under consideration (*Telephone and Railroad Depreciation Charges,* 118 I. C. C. 328-333) but, so far as we are advised, a final determination has not yet been made. The Interstate Commerce Commission has its accounting rules with reference to depreciation charges and, pending its order under section 20 (5) of the Interstate Commerce Act, telephone companies, as well as others subject to the act, have been directed to continue to observe these requirements. The company argues that, although the Interstate Commerce Commission has not finally ruled, the action taken by Congress excludes the jurisdiction of state tribunals under familiar principles (citing cases). We are unable to assent to this view. As the Interstate Commerce Commission has not acted finally in the matter, we are not now called upon to consider the scope of its authority in

relation to depreciation charges, but we are of the opinion that, in any event, until action has been taken which could be deemed validly to affect the amount to be charged to depreciation in connection with intrastate business so as to affect intrastate rates, the prerogative of the state to prescribe such rates, and the jurisdiction and duty of the statutory court in considering their validity to determine the amount properly allowable for depreciation in connection with the intrastate business, are not to be gainsaid. Compare *Board of Railroad Commissioners v. Great Northern R. Co.,* 281 U. S. 412, 74 L. Ed. 936. Accordingly, the court should make appropriate findings with respect to the amount to be allowed in this case as an annual charge for depreciation in connection with the intrastate business." This case appears to be decisive authority on the precise point involved here.

Appellant relies upon *Interstate Commerce Commission v. Goodrich Transit Co.* (1912) 224 U. S. 194. That relates to an order of the interstate commerce commission "prescribing the method of accounts and bookkeeping as to the operating expenses of the carriers" of freight and passengers—in this case a steamship company operating on the Great Lakes. The commerce court had enjoined the operation of the rates as applied to intrastate business. The supreme court held the orders valid and reversed the cause. We think the case is not applicable here. If the interstate commerce commission had entered the field by prescribing depreciation rates for class A telephone companies to use in intrastate business, the principles of the cited case might be usable.

While we do not fully understand the logical processes by which appellant reached one rate and the appellee reached another rate of depreciation, yet, whether the rate here fixed is a legislative or judicial matter for the commission, it is, we think, a determination over which the commission had jurisdiction. It was for 1934 only and steps had already been taken to fix the rate for 1935. If the rate should prove to be confiscatory, if and when applied,

it is quite likely the appellant will be able to discover a remedy. We think the evidence was sufficient to support the order. Finding no reversible error in the proceedings, the final order of the railway commission is

AFFIRMED.